**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Republic of Kazakhstan, | No. CV-20-00090-PHX-DWL |
| Petitioner, | **ORDER** |
| v. | |
| William Scott Lawler, | |
| Respondent. | |

Pending before the Court is a motion by William Scott Lawler to quash a subpoena served by the Republic of Kazakhstan ("Kazakhstan"). (Doc. 29-1 [redacted version]; Doc. 32 [sealed, unredacted version].) The Court previously granted Kazakhstan's application under 28 U.S.C. § 1782 for permission to serve the subpoena, without prejudice to Lawler's ability to oppose it after being served. (Docs. 16, 17.) For the following reasons, the motion to quash will be granted.

## BACKGROUND

In 2017, Big Sky Energy Corporation ("Big Sky"), a Nevada corporation, commenced arbitration proceedings against Kazakhstan before the International Centre for Settlement of Investment Disputes ("Centre"), alleging that the Kazakhstani courts' invalidation of an earlier transfer of oil rights violated a bilateral investment treaty between the United States and Kazakhstan. (Doc. 7 at 6.)

The bilateral investment treaty denies protection "to any company that is controlled by non-U.S. nationals if that company does not conduct substantial business activities in

the United States." (*Id*. at 7.) Accordingly, Kazakhstan wishes to explore whether Big Sky is secretly controlled by non-U.S. nationals—a jurisdictional defense that, if substantiated, would preclude Big Sky from asserting claims under the treaty.

On October 22, 2019, Kazakhstan filed an application under 28 U.S.C. § 1782 to secure documentary and testimonial evidence from Lawler, Big Sky's sole officer and director, to help establish this jurisdictional defense. (*Id*. at 14.) In a nutshell, Kazakhstan asserted that it had made multiple attempts during the arbitration proceeding to obtain such evidence directly from Big Sky, that Big Sky had ignored those requests, that its only alternative was to obtain the evidence from Lawler, and that the tribunal overseeing the arbitration proceeding ("the Tribunal") lacked authority to order Lawler to do anything because he is not a party to the proceeding. (Doc. 16, citing Doc. 7 at 7-11.)

On October 28, 2019, the Court granted Kazakhstan's application. (Doc. 16.) The Court also clarified that, because it had granted the application on an *ex parte* basis, Lawler would remain "free to challenge the subpoena once Kazakhstan serves it." (Doc. 17.)

On October 30, 2019, Kazakhstan served Lawler with the subpoena. (Doc. 18.)

Between November 1 and 8, 2019, Big Sky produced 114 additional documents to Kazakhstan as part of the discovery process in the arbitration proceeding. (Doc. 19-5 [Big Sky's November 1, 2019 letter to Kazakhstan, enclosing 18 additional documents]; Doc. 19-6 [Big Sky's November 8, 2019 letter to Kazakhstan, enclosing 96 additional documents].) The accompanying letters explained that Lawler had sent his entire Big Sky email archive to Big Sky's counsel, that Big Sky's counsel had reviewed the archive in an effort to locate any potentially responsive documents that had not been previously produced, and that the 114 newly disclosed documents constituted the entire universe of relevant documents. (*Id.*)

On November 11, 2019, counsel for Lawler requested that Kazakhstan withdraw the subpoena given that all responsive documentary evidence had been produced. (Doc. 19-1 ¶ 3.) Kazakhstan declined to do so. (*Id.*)

On November 22, 2019, the Tribunal issued a ruling in which it declined to require

Big Sky to take additional efforts to gather and produce responsive documents. (Doc. 37-1 ¶ 6; Doc. 37-4 [redacted version]; Doc. 41-3 [sealed, unredacted version].)[1]

On November 22, 2019, Lawler filed a redacted motion to quash (Doc. 19) and simultaneously filed a motion to seal (Doc. 20). On December 10, 2019, the Court granted in part and denied in part Lawler's motion to seal. (Doc. 27.) On December 11, 2019, Lawler re-filed his redacted motion to quash. (Doc. 29-1.)

On December 9, 2019, Kazakhstan filed a redacted response to Lawler's motion to quash (Doc. 24) and simultaneously filed a motion to seal (Doc. 26). The Court granted in part and denied in part the motion to seal. (Doc. 30.) On December 16, 2019, Kazakhstan re-filed its redacted response to the motion to quash. (Doc. 33.)

On December 16, 2019, Lawler filed a redacted reply to Kazakhstan's response (Doc. 37) and simultaneously filed a motion to seal (Doc. 38), which the Court later granted (Doc. 40).

On January 7, 2020, the Court provided the parties with a tentative ruling on Lawler's motion. (Doc. 42.)

On January 13, 2020, the Court heard oral argument. (Doc. 43.) During the hearing, the parties informed the Court that they might be able to reach a stipulation that would narrow the scope of their dispute. (*Id.*) However, the parties subsequently informed the Court that they were unable to agree to such a stipulation. (Doc. 44.)

**DISCUSSION**

I.  Scope Of Review

Kazakhstan argues, as a threshold matter, that because the Court already granted its application under 28 U.S.C. § 1782 for leave to serve a subpoena on Lawler, the only issue that remains to be resolved is whether the subpoena complies with Rule 45 of the Federal Rules of Civil Procedure. (Doc. 33 at 3-5.) Lawler disagrees, arguing that the Court can

---

[1] Although the Court previously granted Lawler's request to redact information pertaining to the Tribunal's November 22, 2019 ruling, the Court has now determined, after considering the merits of the parties' dispute, that this ruling is essential to the public's understanding of the proceedings in this Court.

and should reconsider the applicability of the § 1782 factors in light of the new information raised in his motion. (Doc. 37 at 10-11.)

Lawler has the better side of this argument. The Court specifically noted in a prior order that, because it had granted Kazakhstan's initial § 1782 application on an *ex parte* basis, Lawler would remain "free to challenge the subpoena once Kazakhstan serves it." (Doc. 17 at 1.) Courts routinely reconsider the applicability of the § 1782 factors when ruling on motions to quash § 1782 subpoenas that were initially issued and approved without adversarial briefing. *See*, *e.g.*, *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 520-22 (S.D.N.Y. 2016) (court initially granted § 1782 application on *ex parte* basis, then permitted respondent to dispute applicability of § 1782 factors in motion to quash); *IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 921-23 (N.D. Cal. 2014) (same); *Pott v. Icicle Seafoods, Inc.*, 945 F. Supp. 2d 1197, 1198-200 (W.D. Wash. 2013) (same). *See also Khrapunov v. Prosyankin*, 931 F.3d 922, 924 (9th Cir. 2019) (magistrate judge initially granted § 1782 application without adversarial briefing, then allowed recipients to file motion to quash and eventually narrowed subpoena's scope). *See generally In re Letter of Request from Supreme Court of Hong Kong*, 138 F.R.D. 27, 32 n.6 (S.D.N.Y. 1991) ("[E]x parte applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.").

Kazakhstan's argument to the contrary is based on a misreading of *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591 (7th Cir. 2011). Although the Seventh Circuit did observe in *Heraeus Kulzer* that, once courts complete the "section 1782 screen," that statute "drops out" and "the ordinary tools of discovery management . . . come into play," the district court in that case allowed both parties to be heard before ruling on the initial § 1782 application. *Id.* at 597-98.

Thus, the issue now before the Court is whether, with the benefit of adversarial briefing, Kazakhstan ought to be allowed to pursue discovery from Lawler under § 1782 (not simply whether the subpoena complies with Rule 45).

II. <u>Merits</u>

The decision whether to grant a § 1782 application is a two-step inquiry. First, the application must meet the statutory requirements in § 1782. *See, e.g., Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004). Second, several discretionary factors bear on whether relief ought to be granted. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

Lawler concedes the statutory requirements are met but argues the discretionary *Intel* factors support his position. (Doc. 29-1 at 8.) In *Intel*, the Supreme Court identified the following four "factors that bear consideration in ruling on a § 1782(a) request":

(1) Whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid";

(2) "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) Whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) Whether the request is "unduly intrusive or burdensome."

542 U.S. at 264. "The *Intel* factors involve overlapping considerations, are considered collectively by the court in exercising its discretion, and are not stand-alone categorical imperatives." *In Matter of Application of Action & Prot. Found. Daniel Bodnar*, 2014 WL 2795832, *5 (N.D. Cal. 2014). "[T]he decision to grant an application is made in light of the twin aims of § 1782: to provide 'efficient means of assistance to participants in international litigation in our federal courts' and to encourage 'foreign countries by example to provide similar means of assistance to our courts.'" *Pott*, 945 F. Supp. 2d at 1199.

A. **Participant In The Proceeding**

In its § 1782 application, Kazakhstan argued that because Lawler is not a party to the arbitration and is therefore outside the jurisdictional reach of the Tribunal, the first *Intel* factor weighed in its favor. (Doc. 7-1 at 13-14.) In his motion, Lawler concedes he is not a formal party to the arbitration. (Doc. 29-1 at 8-10.) However, he argues that the crux of the first *Intel* requirement is whether the evidence being sought is within the jurisdictional reach of the Tribunal and points to the recent success of Kazakhstan in obtaining materials in Lawler's possession (via Big Sky) as proof that he is effectively within the jurisdictional reach of the Tribunal. (*Id.*) He also contends the documents at issue are, in reality, Big Sky's documents—he simply has possession of them by virtue of his position as a Big Sky officer and director. (*Id.*) In response, Kazakhstan reiterates its earlier point that Lawler is not a participant in the proceedings and further argues that Lawler previously refused to provide evidence in the proceedings and has not committed to do so in the future. (Doc. 33 at 11.) Lawler replies that the documentary evidence Kazakhstan seeks is obviously obtainable in the arbitration proceeding because, following Big Sky's productions of November 1 and 8, 2019, Kazakhstan has now obtained all of the documentary evidence identified in the subpoena. (Doc. 37 at 6-8.) Finally, as for availability of his testimony in the arbitration proceeding, Lawler states that he may choose to testify in the form of a witness statement and would, in any event, comply with the Tribunal's "invitation" to provide a statement if asked. (*Id*. at 8-9.)

"[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel,* 542 U.S. at 264. Although the identity of the party is instructive, the analysis turns on whether the *evidence* is "unobtainable absent § 1782(a) aid." *Id. See also In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, 2015 WL 3439103, *6 (D. Nev. 2015) ("Although the case law at times refers to whether the 'person' is within the foreign tribunal's jurisdictional reach, the key issue is whether the material is obtainable through

the foreign proceeding."); *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1039 (N.D. Cal. 2016) ("[W]hether an entity is a participant . . . is not dispositive; *Intel* puts it in the context of whether the foreign tribunal has the authority to order an entity to produce the disputed evidence.").

Here, although Kazakhstan may have had a good-faith basis for suspecting, at the time it filed its application, that documentary evidence within Lawler's possession fell outside the Tribunal's reach, that suspicion has proved unfounded. As noted, in early November 2019, Big Sky produced 114 responsive documents that had been in Lawler's possession and made the following two certifications: (1) "it has thoroughly reviewed all documents/files/boxes provided to Mr. Lawler by [Big Sky's] former officers and directors, and . . . any responsive documents have been provided to [Kazakhstan]"; and (2) "it has produced all responsive documents from Mr. Lawler's email archive." (Doc. 28-4 at 3.) These are tantamount to a certification that all responsive documents in Lawler's possession have now been produced.[2] Moreover, the Tribunal accepted this certification and declined to require Big Sky to search for or produce any additional evidence.

Although Kazakhstan understandably harbors suspicions about the timing of Big Sky's production, given that it occurred almost immediately after the § 1782 subpoena was served on Lawler, the production nevertheless undermines Kazakhstan's assertion (Doc. 7 at 3) that Lawler "cannot be compelled to . . . provide evidence" in the arbitration. *Cf. Khrapunov*, 931 F.3d at 926 (it is appropriate for courts to consider "developments" in the foreign litigation that occurred after the § 1782 application was initially filed when evaluating "the discretionary factors" under *Intel*).

---

[2] During oral argument, Kazakhstan argued that these "very specific certifications" do not necessarily amount to an unqualified certification "that Mr. Lawler has produced all documents relevant and responsive to the requests here that he possesses or controls." The Court respectfully disagrees. Kazakhstan assured the Tribunal, in its letter requesting permission to file a § 1782 application, that "the Petition seeks to obtain evidence whose production has already been ordered by this Tribunal" (Doc. 28-6 at 4) and later certified to this Court that "this Application would not have been necessary if Big Sky had simply produced this information as the Tribunal directed it to do" (Doc. 13 at 14). Moreover, near the end of oral argument, Kazakhstan could not specifically identify any category of relevant documents that might fall outside the two certifications and acknowledged that "those two certifications . . . may well be . . . what we've asked for."

As for Kazakhstan's ability to obtain testimonial evidence from Lawler in the arbitration proceeding, the analysis is more complicated. As an initial matter, both parties appear to be taking positions in this case that differ from the arguments they advanced to the Tribunal. For example, although Lawler now contends "[t]he Tribunal has the power to invite [his] witness testimony if it believes it would aid in the proceeding" and avows that he would comply with such a request (Doc. 37 at 7), Big Sky appeared to take a somewhat different position during the arbitration proceeding, questioning the Tribunal's power to compel non-party testimony. (Doc. 33 at 6, citing Doc. 24-2 at 2 n.22.) Meanwhile, although Kazakhstan has argued in this proceeding that "there is no mechanism in the Arbitration for [Kazakhstan] to compel Lawler to give evidence . . . [so] if Big Sky declines to proffer Lawler as a witness in the Arbitration, and this Application is not granted, then Lawler's evidence will remain concealed" (Doc. 7-1 at 8), Kazakhstan effectively argued during the arbitration proceeding that the Tribunal had the power to require Lawler to provide a witness statement (Doc. 29-1 at 5, citing Doc. 19-2).

In any event, it appears, based on the sealed materials submitted by the parties, that the Tribunal believes it could require Big Sky to produce witness statements from corporate officers (in this case, Lawler is the only such officer) if it believed such statements would be helpful to the resolution of the arbitration proceeding. Moreover, during oral argument, Kazakhstan conceded that the Tribunal effectively possesses the power (via the threat of an adverse inference) to require Big Sky to make Lawler available to testify—it simply argued that an exercise of that power was "very unlikely" because, as a "practical matter," tribunals overseeing investor-state arbitrations are hesitant to impose adverse-inference sanctions against parties that fail to produce witnesses: "[W]e would suggest that that is an unlikely possibility. It is like many things in life, yes, it is a possibility, but it is a very unlikely one."[3]

---

[3] The treatise materials submitted by the parties following oral argument confirm this point. Although Kazakhstan cites treatise provisions stating that "only exceptionally will the tribunal suggest or require that a particular witness be designated" and that "international arbitral tribunals appear to be hesitant, often overly hesitant to draw adverse inferences from non-production of evidence and non-compliance with disclosure orders" (*see* Case No. 19-mc-35, Doc. 43 at 2, citations omitted), these are statements about

Given this clarification, the Court is not persuaded that a § 1782 subpoena is the only way for Kazakhstan to obtain testimony from Lawler. The test under the first *Intel* factor isn't whether there's a *likelihood* a party would be able to obtain the requested evidence in the foreign proceeding, it's whether the evidence is "unobtainable" in that proceeding. Thus, the Court now concludes, with the benefit of adversarial briefing and in light of recent developments in the arbitration proceeding, that the first *Intel* factor cuts against Kazakhstan's request for assistance, both with respect to documentary and testimonial evidence.

B. **Character Of The Proceedings And Receptivity Of Tribunal**

In its application materials, Kazakhstan argued that because the Tribunal had authorized its § 1782 application, the Tribunal had "clearly signaled its receptivity" to the discovery it seeks. (Doc. 7-1 at 14.) Lawler disputes this claim, arguing that the Tribunal's non-opposition to Kazakhstan's request shouldn't be viewed as an affirmative expression of support because (1) "[n]o tribunal constituted by the [Centre] has the power to stop a party from filing a § 1782 petition" and (2) the Tribunal "pointedly refused to extend the briefing schedule for the Arbitration" to await the results of the § 1782 proceeding. (Doc. 29-1 at 6-7.) Thus, Lawler characterizes the Tribunal's position toward Kazakhstan's application as one of "unenthusiastic tolerance." (*Id.* at 11-12.)

Courts differ as to what kind of proof is required under the second *Intel* factor. *See generally In re Schlich*, 893 F.3d 40, 49 (1st Cir. 2018) ("Some courts have ruled that the party opposing discovery bears the burden of proving that the foreign tribunal would be unreceptive to the evidence and that, absent such proof, the factor weighs in favor of granting discovery. Other courts have required 'authoritative proof' of the receptivity of the foreign tribunal before finding that this factor weighs in favor of discovery. Still other courts have not specifically placed a burden of proof on either party as to any of the *Intel*

---

probability, not availability. Moreover, Lawler cites provisions verifying that "a tribunal presumptively possesses the power to order a party to produce persons within its control for examination at an evidentiary hearing. The classic examples of such witnesses are corporate officers, directors, or senior employees of a party to the arbitration . . . ." (Doc. 45 at 1, citation omitted).

- 9 -

factors and, instead, seem to have neutrally analyzed the contentions and supporting evidence presented by all the parties in deciding whether to exercise their discretion.") (citations omitted). *See also In re Application Pursuant to 28 U.S.C. § 1782 to Take Discovery of ASML U.S., Inc.*, 707 F. App'x 476, 477 (9th Cir. 2017) ("[T]he second *Intel* factor is met because Nikon's experts stated, in unrebutted declarations, that the foreign tribunals would welcome the discoverable evidence.").

Here, neither party has mustered authoritative evidence of the Tribunal's receptivity to the evidence sought. On the one hand, the Tribunal was offered the opportunity to object to Kazakhstan's request for leave to file the § 1782 application and chose not to do so. On the other hand, it's not clear whether the Tribunal could have objected—Lawler asserts in his motion that the Tribunal isn't empowered to oppose such requests and Kazakhstan doesn't address this argument in its response. Also, Lawler may be overstating things by arguing the Tribunal "pointedly refused" to delay the arbitration schedule during the pendency of the § 1782 litigation—Kazakhstan noted during oral argument that the Tribunal simply retained the existing schedule, without making any comment about why it was doing so, and argued that such inaction shouldn't be viewed as a sign of disinterest because the schedule rarely gets changed in investor-state arbitrations. Thus, the Court concludes the second *Intel* factor is neutral.[4]

…

…

---

[4] Lawler raises an additional argument concerning factor two, but the Court will consider it separately for the sake of analytical clarity (noting also that *Intel* does not purport to provide an exclusive and exhaustive list of factors). *See* 542 U.S. at 264 (describing the discretionary factors as topics that "bear consideration"). Lawler argues that because reciprocal discovery privileges are not being granted to him, ordering his deposition would amount to "one-sided discovery" that could skew the result of the arbitration. (Doc. 29-1 at 11-12.) The Seventh Circuit rejected an analogous argument where one party was confined to narrow German discovery rules and the other could use broad U.S. procedures. *Heraeus Kulzer*, 633 F.3d at 595. The court, while noting the potential for unequal discovery, stated that the party opposing the § 1782 application "hasn't indicated that there is anything in [its opponent's] files that would help the defense." In other words, without a showing that allowing Kazakhstan to "shield its own witnesses" obstructs Big Sky from making its best case, it's difficult to see how this lack of reciprocity is unfair, confusing, or would tend to skew results. (Doc. 29-1 at 13.)

### C. Circumvention Of Foreign Proof-Gathering Restrictions

Lawler identifies two reasons why the § 1782 application is an attempt to circumvent the Tribunal's discovery orders: first, because the Tribunal previously rejected Kazakhstan's request to obtain a witness statement from Lawler regarding the sufficiency of Big Sky's document production efforts, and second, because the subpoena would force Lawler to produce, without redaction, documents that the Tribunal previously allowed Big Sky to produce after redacting certain sensitive information. (Doc. 29-1 at 12-14.) Kazakhstan's response is that, because the Tribunal approved its request to file a § 1782 application, the application cannot amount to circumvention of the Tribunal's proof-gathering restrictions. (Doc. 7-1 at 14-15; Doc. 33 at 9-11.)

"[A] district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *Intel*, 542 U.S. at 265. Courts in this circuit have rejected a "quasi-exhaustion requirement," but an applicant "side-stepp[ing] less-than-favorable discovery rules by resorting immediately to § 1782 may . . . be a factor in the analysis." *Nikon Corp. v. ASML US Inc.*, 2017 WL 4024645, *3 (D. Ariz. 2017).

Here, although Kazakhstan's application did not constitute an effort to engage in circumvention at the time it was filed, the landscape has now changed, at least with respect to Kazakhstan's request for documentary evidence. As noted, on November 22, 2019, the Tribunal declined to require Big Sky to undertake additional efforts to review Lawler's email archive for responsive documents. Nevertheless, Kazakhstan acknowledges that it wishes to use the § 1782 subpoena as a tool to confirm that Big Sky's document production was complete. (Doc. 33 at 13 ["[I]t is in no way burdensome for Lawler to produce the limited number of documents he claims he already has—if that is in fact the entire universe of responsive documents he possesses—and to require him to do so in his individual capacity while subject to this Court's sanction powers. Lawler has already shown that he has no problem withholding documents relevant to the Arbitration until this Court demands he produce them, so forcing him to commit on the record here that he has produced all

relevant documents has become an unfortunate necessity that is in no way burdensome.").

The analysis concerning Kazakhstan's request for testimony from Lawler is less clear-cut. Although Lawler has identified prior instances where the Tribunal declined to require Big Sky, via Lawler, to provide witness statements concerning the sufficiency of its evidence-gathering efforts, Kazakhstan's request in this proceeding isn't limited to testimony on that particular subject area.

For these reasons, the Court now concludes, with the benefit of adversarial briefing and in light of recent developments in the arbitration proceeding, that the third *Intel* factor cuts strongly against Kazakhstan's request to require Lawler to produce documentary evidence and is neutral with respect to Kazakhstan's request to depose Lawler.

D. **Unduly Intrusive Or Burdensome**

Lawler argues the subpoena is unduly intrusive and burdensome because Big Sky has now produced all of the documents that Kazakhstan seeks. (Doc. 29-1 at 15; Doc. 37 at 5-6.) Kazakhstan responds by painting Lawler as an unsavory character and arguing that "given Lawler's unquestionable history of hiding the ball, neither the Court nor [Kazakhstan] should have to accept his lawyer's representation that those are the only documents that exist." (Doc. 33 at 12-14.)

The analysis here dovetails with the analysis concerning the third *Intel* factor. To the extent Kazakhstan simply wishes to require Lawler to re-produce all of the documents Big Sky has already produced in the arbitration proceeding, such a request would be unduly burdensome. *Macquarie Bank*, 2015 WL 3439103 at *9 ("When the information sought is equally available through the foreign proceeding from a party to that proceeding, such requests targeting a different person in the United States are by their very nature unduly burdensome."). Meanwhile, to the extent Kazakhstan wishes to require Lawler to produce more documents than Big Sky has produced, although that request might not be unduly burdensome, it is at odds with the Tribunal's previous discovery rulings. Finally, as for testimony, to the extent Kazakhstan wishes to require Lawler to testify about his evidence-gathering efforts, such a request would be unduly burdensome, but to the extent the

- 12 -

requested testimony would touch upon other topics, there would be no undue burden.

III. Summary

The landscape has changed dramatically since Kazakhstan filed its § 1782 application in October 2019. Soon after Lawler was served with the subpoena, Big Sky produced the very documents Kazakhstan wishes to compel Lawler to produce. Although the Court shares Kazakhstan's skepticism toward Lawler's claim that this timing was coincidental, the bottom line is that the *Intel* factors no longer support Kazakhstan's request for assistance in obtaining evidence from Lawler—(1) Kazakhstan obviously can obtain (because it has obtained) the very documents it seeks in this proceeding via the arbitration proceeding, and the Tribunal could effectively compel Lawler to provide testimony, too; (2) the Tribunal did not postpone the arbitration's briefing schedule to await the results here; (3) the Tribunal declined to require Big Sky to undertake additional efforts to review Lawler's email archive for responsive documents; and (4) it would be unduly burdensome to require Lawler to re-produce documents Kazakhstan already has in its possession.

Accordingly, **IT IS ORDERED** that Lawler's motion to quash (Doc. 29-1) is **granted**.

Dated this 27th day of January, 2020.

Dominic W. Lanza
United States District Judge